How far are you arguing on behalf of both defendants? Yes, Your Honor. Good morning, William Harris on behalf of Frederick Staves. I'm making a special appearance for Ms. Rocklin on behalf of co-defendant Ernest Wayne. All right. In this case, we contend that the wiretap was not necessary for a simple reason, and the simple reason being that law enforcement had a tool in the toolbox that they didn't use. And that tool would have fully penetrated the conspiracy without resort to a wiretap, and that tool was apparent on the face of the wiretap affidavit presented in the first instance to Judge Collins. As explained in the brief, this particular tool that was available to the law enforcement in this case would have complied with the Title III consent exception. It would have been legal under Title III consent. It was legal under the Fourth Amendment, as most recently indicated by the jurisprudence in this court, under the Koonig case that I cited in the 28J. And it has to be construed as a standard investigative technique simply because it's the use of an informant. It's the use of CS1 to do once again what CS1 had done before. And it's a procedure not novel, as counsel for the government argued, but it's a procedure. It's as old as the Trojan horse. Now describe it for me exactly. The procedure is the connection of CS1 to Staves, who was the alleged hub of this narcotics trafficking organization, was that CS1 provided cloned cell phones to Staves. So we're saying then that's right on the face of the affidavit. So CS1 provides a cloned cell phone to Staves with a known electronic signature. Staves purchases this cell phone knowing it's cloned and or hot in some sense. He knows he shouldn't be on the airwaves using that phone, and so he uses it. He conducts narcotics-related business over the cell phone. Law enforcement picks it up. They fully penetrate the conspiracy. You don't need a wiretap. Well, this is saying you can use an illegal procedure, advocate an illegal procedure to avoid a wiretap order. Is that what you're telling me? Well, no. The question so that begs the question is, is it illegal? It's not illegal if the Title III consent exception applies. So that gets to the question, is it consent or not? But in terms of the law enforcement officers' use of the cloned phone, then the law enforcement officers would be using an illegal mechanism. Well, you could do it like a money laundering case where it doesn't have to be actual narcotics proceeds. It could be represented as that. That would be the equivalent of at that point, I don't think you have to actually violate Pactil's procedures. You could represent that it's a cloned phone. Okay, here's Dave's. Now, I've done it in the past before I flipped. I'm coming in and I'm giving you a cloned cell phone, whereas it's not really a cloned cell phone. It's just like a money laundering case. Counsel, if that had happened, you would be attacking the police methods. If the police had used the cloned phone and gotten the information from that and directed that activity, wouldn't you be challenging that as outrageous government conduct? No, I suppose I would zero in on whether or not it was consent. I think the key question and the question that Judge Wilson on the motion was grappling with is, is the user of a cloned, a knowing user of a cloned cell phone, does that fall under the Title III consent exception or not? I think that's the gist of this appeal here. The consequences, if we were to adopt your position, would be a neat way for government to avoid going in and explaining the need for a wiretap. You're getting the wiretap without going for an order. This, to me, is kind of offensive. Well, it happens in consensually monitored phone calls all the time. It's like the consent exception exists. Congress put it in there for a reason. And the reason is the conceptual reason is if you consent, it's not offensive. Like the old maxim, if you consent to harm, it's no harm. And in this and in this case, if you go in there and I don't see it being conceptually any different. As I said, in a money laundering case where you come up and they say, here is narcotics proceeds. Please launder it through the system. Well, I suppose in one sense it's offensive that they even get involved in it. It's sort of unseemly. It's illegal. But at the same time, that's what law enforcement does. That's their mandate to ferret out crime here. And I just believe that conceptually it's less offensive and it's less intrusive than a wiretap simply because you go in with your eyes wide open. I mean, on the prison cases, I think are different because the prison telephone cases, because it's a legitimate line. And so you have to put on the record. Give these guys fair notice. Or the campground case that I cited, there it's a legitimate phone line, a pay phone. There's an expectation of privacy. But when you get into the game of going in and using a cell phone that you know is cloned or hot or something, there is no legitimate expectation of privacy. Counsel, we understand your argument. Maybe we can hear from the government and then. Thank you. We'll give an opportunity to respond. Good morning, and may it please the Court. Tim Seawright on behalf of the United States. Let me just go right into the points that he has made. First of all, he is arguing in terms of expectations of privacy, the Fourth Amendment. But the Court wouldn't go there as a first stopping point at any rate. You would first go to Title III in the wiretap statute. I'm not aware of any case from this circuit or any court that says that Title III in 2518 is part and parcel of the Fourth Amendment. No, Counsel, he's arguing one of the exceptions to Title III, the consensual exception. Okay. Examining Title III, though, the question would be, is that something really that Congress intended? Congress has not been at all shy about enacting laws regulating such things as wiretap interception. Of course, we have the Patriot Act and things like that. So what he's essentially asking you to do is look at that statute and say that this is something that could be interpreted as implied consent. And if that is what Congress intended by a consent exception in the statute, it does not plainly emerge from that. The other point would be to make, though specific to this particular case, is he is making a necessity argument. And under the statute, of course, it is normal investigative techniques that must first be exhausted, or sometimes called traditional law enforcement techniques. I know of no court, federal or state, which has ever adopted the idea which defendant is proposing in this case. We come to the exclusionary rule. The purpose, of course, of the exclusionary rule is to deter police misconduct. In this particular case, as the court noted when Mr. Harris was speaking, these agents, instead of trying out this technique, which very likely or very well may be illegal, went through all the hoops of, of course, getting Department of Justice approval, as required by the statute, and then applying to a judge to review the facts of the wiretap affidavit. After doing that, the wiretap affidavit was approved. Predictably enough, there is not much case law with regard to what the defendant suggests. The government cited a First Circuit case interpreting 2518. Consent should not be casually inferred in light of the prophylactic purposes of Title III. Pretty intrusive to go in and listen in on people's conversations. And in this case, interpreting the statute plainly, that was not, does not immediately emerge that that is something that Congress intended. There is a second argument being raised by defendant, and I can address that at this point. Anything you want to say, it might be a good idea to say it now. Very good. With regard to Frank's hearing, I do want to point out that those two arguments that he makes are actually contradictory. The first one, both arguments are directed at CS1 in the affidavit. And what he says in his first motion is CS1 is this individual from whom he, the defendant, had been obtaining these clone phones in the past, and if he had given him a clone phone, he would have used it. Then in his second argument, he says, you know, maybe CS1 is actually not that person who had been giving me clone phones. Maybe he's another guy, and I never got any clone phones from him. Of course, that means his first argument wouldn't work. So I do make that point. The two arguments are contradictory. So he made the second argument to make the point that there should have been a Frank's hearing because there were misrepresentations in the affidavit. By CS1, yes. And I'll address that. Just as a factual point, I do want to note this, of course, is de novo review of the affidavit. If you took everything that CS1 has stated in the wiretap affidavit out, it would still state probable cause. Reading the wiretap affidavit, as we point out in our brief, CS1 actually had contact with the defendant approximately two years, last had contact, about two years before the wiretap was submitted. CS1 never had any discussions with the defendant over the telephone that would ultimately be intercepted. And of course, the wiretap statute is not directed at a person. It's directed as to whether or not a particular instrument is going to be used in furtherance of crime. He never had any conversations, CS1, with the defendant over that telephone. CS2 is a very different thing. He had several recorded conversations with the defendant over the instrument that would be intercepted, that concerned narcotics sales. Just on a more basic level, do we look at the credibility of the person who's quoted in the affidavit, or do we look at whether or not the proponent of the affidavit gives misleading statements? Yes, you're exactly right. Under the Franks two-part standard, it's the affiant whose credibility must be challenged, not the informant. And in this case, he never made any challenge to the affiant. He said the whole time, CS1 said that this was false, but didn't go on to say, and the affiant should have known this was false because of X, Y, Z. So, again, he doesn't meet those two-part standard of Franks. I believe I've made all my points. Any questions? Thank you, counsel. Thank you. We'll give you five minutes for rebuttal. Yes. First, to address this question of what case law supports my theory here, there are several cases that do. First of all, I would, as cited in the brief, the United States v. Amin case indicates that consent can be implied in fact. Is it a Title III case? I believe it was, Your Honor. But I have to check. It's cited in my brief. I think it's a Second Circuit case. But it was sort of the leading case that followed from there that consent can be not only expressed but implied in fact. And then, in addition, as cited in the opening and reply briefs, this court from about a year ago, the Theofel v. Ferry Jones case that Judge Fletcher sat on, indicates, and as Judge Kaczynski laid out in there, you look at the common law to determine the scope of consent. In that case, there was a statute where it had to do with electronic storage and a subpoena on an Internet service provider. But Judge Kaczynski went through the analysis of looking at the common law as to whether or not to put a gloss on that word authorization under the statute. And in this case, you look to the common law of consent, and the basic common law that I cited about knowing participation in illegal activity equals consent to foreseeable harm, which seems to be a fairly well-established common law principle. And I cited that pre-1973 abortion case that lays that out in California law. As far as the points counsel made about the second motion being inconsistent somehow or undercutting the position of the first motion, on the first motion, the question before Judge Collins was, based on the four corners of this affidavit, is there necessity or not? And so what happened down the line subsequent, after that motion was denied and new information came down lighter, in my mind is not conceptually significant to the question of was there or was there not necessity on what was presented to Judge Collins. As far as the argument that normally you're supposed to, the police are supposed to go through the Title III hoops and satisfy, touch all the bases here, our basic argument is that it's less intrusive. It's not intrusive at all under the law to do it the way we suggested. So I would suggest that going this way. That's why the consent exception, if it applies, and obviously we have to fit within that consent exception, but assuming the consent exception applies, there's no privacy interest. You completely satisfy the citizen's right of privacy because it consents. So unless the Court has any other specific questions, I'll leave it at that. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the Court. The next case on calendar for argument, I'll just call it Merced v. Ashcroft. Thank you.
judges: Fletcher Hansen, Rawlinson